DOMENGEAUX, Chief Judge,
dissenting.
The jury in a nine to three verdict held for defendant driver in this vehicular accident case, holding him completely free of fault. The district judge granted a JNOV and found both the plaintiff driver and the defendant driver to be 50% at fault.
The defendant driver was operating an 18 wheeler and had made a delivery at a Super Store and was stopped at the intersection of the Super Store driveway and the highway intersection, preparing to turn right on the highway. Defendant testified that before he began his turn, he checked to be sure that it was safe, and after so determining, he began his turn. The plaintiff driver, coming from the west, or to the defendant’s left, attempted to pass defendant and cut sharply in front of his van, hitting the van’s front tire and bumper and ending in a ditch.. The plaintiff driver contended that the defendant’s van pulled onto the highway and into her path, causing the collision.
The trier of fact, the jury, had to decide whether or not the defendant driver had entered the roadway and preempted the intersection when the plaintiff driver approached in an easterly direction on the highway at its intersection with the Super Store parking lot. The jury was presented with conflicting testimony from the plaintiff driver, the defendant driver, their experts and two independent eye witnesses. There is a clear conflict as to how this accident occurred and in particular, the positioning of both drivers’ vehicles prior to the accident.
Plaintiff driver testified that the defendant driver darted out in front of her. The defendant driver testified that as he was to exit the parking lot, he stopped, let one car pass, and observed the plaintiff vehicle exiting Fritz Street about 500 yards away. It seemed safe to proceed and he did so. He stated that he was 8Aths into the road when the plaintiff vehicle attempted to pass him and cut in too close to his vehicle. An eye witness travelling west on the highway indicated what he saw and it did not seem like the van was a threat to the plaintiff vehicle, and further that the defendant vehicle did not cross the center line. Another witness heard the impact and viewed the positioning of the vehicle and her testimony favored the defendant driver. One of the expert witnesses testified that because of the plaintiff driver’s misjudgment when she cut in, this accident occurred.
*304 It is clear to me that the trial judge in his overzealousness invaded the province of the jury, wrongly weighed the evidence, evaluated the credibility of the witnesses, and substituted his judgment of the facts for that of the jury.
Examples of the trial judge’s interfering in the jury’s business is evidenced by the following quotations from his oral reasons, reproduced as transcribed:
“The question is whether Clarkson is at fault and I wrestled with that as to whether to not I find him to be to have legal fault. If Mrs. Fisher saw what she should have seen and taking the correct you we know even though Mr. Clarkson probably should not have pulled out into the highway in front of her. I mean, it he just is, you know, a big old truck and know they are going to do what they want to do. I think that that is probably what he was feeling. He preempted the highway before Mrs. Clarkson before Mrs. Fisher got there. I am rambling now, but I am still thinking. I am wondering whether Mrs. Fisher, in making her decision to pass considered whether or not he would have stopped before he preempted the highway and whether or not when he got to the shoulder or to the white line, he was going to stop to allow traffic to pass. If you consider the hy-pothet I am giving you, she would have had approximately four seconds to react from the time he got to the highway, less than that actually. She would have had to make her mind up in less time than that to cross before she got to the center-line, before he got to the white line, whether he was going to give her the road, allow her to pass, and then get out and then one or not....”
******
“I don’t believe she was pulling out of Fritz Street, I believe she had pulled out and was already on the highway. When the first car passed, she might have been, but I don’t think she was when he started the maneuver. I don’t think the evidence reflects that. When you look at the, at the, if he tried, he would have had to, at where he was to make his turn successful, he would have had to start his turn immediately 20 feet behind the curve, he would have made the turn. He probably already had turned some. He’d have had to make the turn.”
******
“But his turn ... his turn radius, I figured he turned about 60 degrees and that ... that is approximately 30 feet. And the reason I know that is because if you take a 45 degree radius, multiply it times pie, you get 141 feet and you divide it by 6 you get about 25 feet ... 24½ to 25 feet which is 60, that is what 60 degrees is. I figure it that way. That gives them six seconds, that gives Mrs. Fisher six seconds to see what he was doing. She still got to keep a sharp lookout to see maybe he is going to come out in the road too. But, I think an 18-wheeler ... a truck that moves 4V2 miles an hour takes 10 to 15 seconds to turn, should give a car that is that close passage before they preempt the lane because you don’t know what they are going to do. You don’t know whether that car is going to be able to success, you don’t know whether that car ... the driver of that car has got 20/200 vision, which is probably part of the problem here was, I feel Mrs. Fisher’s eyesight. She doesn’t have very good eyesight and that may have given her a problem in judging when to turn back inasmuch as the oncoming vehicle.” (Emphasis added.)
I respectfully suggest that this is another example of the trial judge taking over the duties of the jury and the trier of fact. Bolstering my position is the fact that the nine to three jury verdict evidences the fact that reasonable persons can differ on factual matters; when that happens, under the jurisprudence, the trial judge has got no business granting a JNOV.
We should not attempt in these type case to justify the erroneous actions of trial judges in taking cases away from the jury when it is evident that they do so contrary to the well-established jurisprudential rules in cases of this nature. I suggest that this *305 case should be reversed and the jury verdict reinstated.
I respectfully dissent.